ACME MILLS, INC., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No.. 1598. Promulgated April 26, 1927.

In the condition and circumstances under which the sale of the mill property in question was made in October, 1912, the selling price does not establish the March 1, 1913, market value thereof, since there was not the open market and freedom from compulsion in that sale that is contemplated by the Board's prior rulings.

*James Breathitt, Jr., Esq.*, for the petitioner.
*Donald D. Shepard, Esq.*, for the respondent.

This proceeding involves deficiencies of $4,908.71, $2,107.23, and $224.65 for 1917, 1918, and 1920, respectively. They result from the Commissioner's computation of the allowance for exhaustion, wear and tear of property on the basis of original cost thereof plus cost of improvements instead of on the basis of an alleged value as of March 1, 1913.

FINDINGS OF FACT.

The petitioner is a corporation engaged in the business of operating a flour mill in Hopkinsville, Ky.

The mill consisted principally of two units known as Mill " A " and Mill " B." They were well built and were of mill-type brick construction on a stone foundation, and they had suitable elevators, storage room, and a power plant. They were erected at a total cost of approximately $150,000, exclusive of machinery, and it would have cost about that amount to reconstruct them as of March 1, 1913. The cost of equipping a mill with machinery as of March 1, 1913, would have been from $110 to $115 per barrel of capacity. Mill " A " was built about 1898 and Mill " B " about 1905 or 1906. The total capacity of the mill was 1,000 barrels of flour a day. The land on which the mill was located had a value of about $10,000, as of March 1, 1913.

The mill had formerly been operated by the Acme Mills & Elevator Co. On January 1, 1910, the mill property was mortgaged or deeded in trust to a local bank as security for a proposed bond issue of $200,000. Of this amount $191,350 in bonds was actually issued.

In 1911 it became financially involved as a result of the misappropriation of its funds by certain of its officers. Two of the officers were indicted, tried, convicted and sentenced to the penitentiary. Suit was filed against it on March 29, 1911, by its creditors; on June 14, 1911, judgment was entered decreeing a sale of the assets of the company; and on July 8, 1911, the property was sold by the com-

missioner of the court for the sum of $73,710. This was only slightly in excess of two-thirds of the value of the property as appraised by housekeepers of the county, apparently in pursuance of local law.[1]

The appraisal is as follows:

| | |
|---|---:|
| Mill "A," as described in judgment | $85,000 |
| Mill "B," as described in judgment | 25,000 |
| Personal property, consisting of wagons, harness, typewriter, and office fixtures | 513 |
| | 110,513 |

The property was acquired by three trustees acting for creditors and stockholders of the defunct company. None of these trustees had any knowledge whatever of the milling business. Two of the trustees are now dead. The mill was not operated and was idle during the whole of the period from a date several months prior to July, 1911, to December, 1912. The trustees endeavored to sell the property. No purchaser for the property could be found locally nor in the county. Advertisements offering the property for sale were placed in newspapers, including the Louisville Courier Journal, and in various trade magazines of the milling business. The creditors were impatient and were pressing for a disposition of the matter, and in October, 1912, a contract of sale was made with persons from Clarksville, Tenn., who were experienced in the milling business. The amount of $49,250 was paid for the property. A representative of the purchasers immediately took charge of the mill and conditioned it for operation, at a total cost of about $6,000.

At the time of the sale by the trustees the property had sustained an average depreciation of about 30 per cent and was in a condition substantially equivalent to 70 per cent of what it would have been if new.

The purchasers formed the petitioner corporation, Acme Mills, Inc., and by deed under date of January 1, 1913, the property was conveyed to it. The mill started operations the latter part of January.

None of the officers or stockholders of the petitioner were connected in any way with the Acme Mills & Elevator Co. at any time.

There was no general depression in the milling business around March 1, 1913.

The books of the Acme Mills & Elevator Co., showing the exact cost of the property, are lost.

The value at March 1, 1913, of the property involved in this controversy was $100,000.

---

[1] Carroll's Kentucky Statutes, § 1682, subsection 1, and § 1684.

OPINION.

KORNER,[1] *Chairman:* The issue here to be determined is the market value on March 1, 1913, of the mill property owned by petitioner. The respondent contends that the sale of the property by the trustees in the latter part of 1912 established a market value sufficiently close in point of time to March 1, 1913, to establish value at that date. The petitioner contends that the sale does not establish a market value at the basic date for the reason that the conditions at the time of sale and at the basic date are dissimilar, and that the evidence establishes the market value as of March 1, 1913, in an amount not less than $150,000.

In the instant case the sale of the property by the trustees for $49,250, does not, in our opinion, establish the market value of the property as of March 1, 1913, under the conditions in which that sale was made. A thousand-barrel flour mill situated in a small community may have a market which would not be found readily in that small community. The market for such a mill would of necessity be limited in extent and difficult of quick or easy ascertainment. The trustees were making efforts to dispose of the property. The creditors were becoming more and more restive and impatient for a disposition of the property and for at least a partial settlement of their claims. We feel that a sale of this property under such circumstances for $49,250 is not a fair or just criterion of its market value. The purchasers obtained the property at a price which, in our opinion, was not commensurate with its market value. While not, perhaps, under a strict compulsion to sell, the action of the trustees was impelled by a very decided pressure from creditors whom they represented to dispose of property which, under existing conditions, was to them a white elephant. There was not an open market and willingness to sell, free of compulsion or necessity.

Another factor operates against the establishment of the selling price of $49,250 as the March 1, 1913, market value. When the property was sold the mill was not in operation and all of the circumstances then surrounding it were permeated with an atmosphere of gloom. Contrast this condition with affairs as they existed on the basic date. $6,000 had been expended in making repairs and in conditioning the mills for full operation. It had been so conditioned on the basic date and was then in operation under the management of experienced and successful millers.

The petitioner contends that it has proved the market value of this property at March 1, 1913, to be not less than $150,000. Considerable testimony was adduced tending to show the value at that

---

[1] This decision was prepared during Mr. Korner's term of office.

date to be in that amount or more. It offered the testimony of the builder of the mill and of the operator of another mill in the same town tending to show the market value to have been in excess of that amount. One witness had been in the milling business for thirty years as the active head of a large mill. He had inspected the petitioner's plant several times in the year 1912 with a view to a possible purchase of it. He was thoroughly familiar with the character and construction of the mill and the type of its equipment. He was a member of the various milling associations and had annually attended their meetings and heard discussions yearly as to the cost and values of mills and their construction and equipment. He was entirely disinterested in this controversy, having no interest in the petitioner. He gave it as his opinion that, assuming the rule laid down heretofore by the Board as to the bases and elements to be considered in fixing a value, the mill had on March 1, 1913, a value of $200,000. The fact that he did not purchase at that figure when the opportunity was then afforded him, tends to modify the weight of his testimony as establishing a value in that amount. Other testimony, while tending to support the last named valuation, lacks the particularity and definiteness which would justify a finding of such a value.

We have given careful consideration to all the evidence and have weighed it as a whole. It is our conviction that the petitioner has established a value of $100,000 and we have so found.

> *Judgment will be entered on 20 days' notice, under Rule 50.*